UNION TRACTION COMPANY OF INDIANA *v.* GROHS.

[No. 11,684.  Filed January 18, 1924.  Rehearing denied May 13, 1924.]

1. RAILROADS.—*Duties as to Platforms.—Freight Platforms.— Passenger Injured by Falling From.*—In an action against a railroad company by an intended passenger who suffered injuries by falling from a high platform near its passenger depot, which was used only as a freight platform and was not used, or intended to be used, by passengers, the plaintiff can only recover when it is shown that the railroad company owed him a duty to protect him from the injury of which he complains, at the place where he received the same, that it had failed to perform that duty, and, as a result of such failure, the plaintiff was injured, it not being a question whether it owed a duty to some one to place a guard upon the platform, but whether it owed a duty to him.  p. 485.

2. RAILROADS.—*Duty to Keep Platforms Safe.—Extent of.*—It is the duty of a railroad company to keep its depots and platforms safe for persons having occasion to use them, but the rule does not extend to such portions of the premises as are obviously not adapted to, or used for, or necessary for, the transaction of the business for which any such person is on the premises, and if he goes to such a place, he puts himself

Union Traction Co. *v.* Grohs—81 Ind. App. 481.

outside the protection of his invitation, and the company is not responsible for injuries he may receive, unless it inflicts them wantonly and purposely.  p. 485.

3.  RAILROADS.—*Freight Platform.*—*Liability for Injuries to Passengers on.*—A person visiting a railroad depot in the night-time for the purpose of purchasing a ticket and checking his baggage, who, finding the ticket agent absent from the office, went upon a high freight platform to search for the agent, and, in the darkness, walked off the platform, there being no railing around it, cannot recover from the railroad company for the injuries received, and a verdict in his favor cannot be sustained.  p. 487.

4.  TRIAL.—*Instructions.*—*Refusal to Give.*—*Covered by Instructions Given.*—Where the subject-matter of requested instructions was covered by instructions given, there was no error in refusing to give them.  p. 488.

From Wells Circuit Court; *Frank W. Gordon,* Judge.

Action by Charles Grohs against the Union Traction Company of Indiana.  From a judgment for plaintiff, the defendant appeals.  *Reversed.*

*J. A. VanOsdol, Abram Simmons, Charles G. Dailey* and *Virgil M. Simmons,* for appellant.

*Aiken, Douglass & Aiken* and *Eichhorn & Edris,* for appellee.

NICHOLS, J.—Action by appellee for damages resulting from injuries suffered by appellee because of the alleged negligence of appellant in failing to maintain a guard rail on its freight platform and steps thereto, at its station in the city of Kokomo, Indiana, from which platform or steps appellee fell and was thereby injured.

There was an answer in denial, a trial by jury, which resulted in a verdict in favor of appellee for $1,000, on which, after appellant's motion for a new trial was overruled, there was judgment for appellee.  The only error assigned in this court is the action of the court in overruling appellant's motion for a new trial, the reasons for which are hereinafter considered.

The undisputed facts as established by the evidence

are that appellant in connection with its line of railroad owned and maintained a freight and passenger depot, waiting room, station and ticket office in the city of Kokomo. The building used for the purposes above mentioned, faced the west, and there was a street on the west of the building. There were four doors on the west side of the building used for a passenger station, waiting room and ticket office, through which passengers and prospective passengers entered the waiting room. They were double doors and the ticket office was about directly to the east of them. There was a door in the waiting room on the south side that led outside of the building, which door was about ten feet from the ticket office. The waiting room was about forty feet square. There was cement outside of the waiting room on the south side and south of the door on the south side, and there was a platform for handling freight, and a spur of the track, and a place south of the door on the south side, provided for trunks and for the handling of baggage and express. The platform extended east along the south side of the building and with the building, which was twelve feet wide at the east and so continued up to within about fourteen feet of the west end, where there was a jog in the building, so that the platform from that point to the west end thereof was six feet wide. It was about five feet high all the way back and was a board platform. There were steps at the west end leading from the surface up to the top of the platform. These steps, five in number, were located about fifteen feet east of the door on the south side of the waiting room, were made of wood and were three feet wide, and the platform extended south of the steps about three feet. Said platform was used for the storage of freight and for loading and unloading freight and for no other purpose, and the steps before mentioned were used for the purpose

only of ascending said platform for the purpose of storing freight thereon and loading and unloading freight, and said steps and platform were never used for passengers or by passengers, or for or by prospective passengers. Appellee, on the morning of October 15, 1919, was in the city of Kokomo, in connection with a vaudeville, doing a dancing act, and desired to become a passenger over appellant's line on the morning of October 16, 1919, from Kokomo to Ft. Wayne. Some time in the forenoon on said October 15, appellee went to the station of appellant, entered the waiting room through one of the west doors, went to the ticket office and interviewed the ticket agent in reference to the purchase of a ticket to become a passenger on the next morning. He was informed by the ticket agent that if he would come to the station between eleven and twelve o'clock that night, he would be furnished a ticket and that his baggage would be checked. When appellee came to the station that night at the time mentioned, he went to the ticket window but found no one in the ticket office. Thereupon, he left the ticket window, went out of the waiting room through the south door, and ascended the steps to the freight platform, upon which he walked about seventy-five feet to near the east end thereof, where he inquired of some men who were handling freight as to where he might find the ticket agent. These men informed him that he might find such agent at the ticket office. He then walked back over the platform and at the west end walked off the same, falling to the surface on the cement and was thereby injured. Appellee knew that the steps were there, having ascended them in going on to the freight platform. There were electric lights on the platform extending along the center of the same from one end to the other and there were lights in the waiting room. Appellee testified that as he ascended the steps to the

platform, he felt his way very carefully with his hands. He also testified that he saw the lights along the center of the platform. The ticket agent was only absent from the office about five minutes, being upon business in the basement. Upon his return, appellee came to the ticket window and purchased his ticket, and, as soon as the baggage arrived, had it checked.

In order that appellee may recover in this action, it must appear by the evidence that there was a duty upon the part of appellant to protect him from the injury of which he complains, at the place where he received the same, that appellant failed to perform its duty in that regard, and, as a result of such failure, appellant was injured. The question is not whether appellant owed a duty to some one to place a guard rail upon the platform or steps, but whether it owed such duty to appellee. Unless it owed such duty to appellee, there can be no recovery. 1 Thompson, Negligence p. 2, §2; *Salem-Bedford Stone Co.* v. *O'Brien* (1895), 12 Ind. App. 217; *South Bend Iron Works* v. *Larger* (1894), 11 Ind. App. 367; *Evansville, etc., R. Co.* v. *Griffin* (1885), 100 Ind. 221. The last case states the rule to be that: "The owner of premises is under no legal duty to keep them free from pitfalls or obstructions for the accommodation of persons who go upon them or over them merely for their own convenience or pleasure, even where this is done with his permission. In such case the licensee goes there at his own risk, and, as has often before been said, enjoys the license with its concomitant perils." The rule is well settled that it is the duty of a railroad company to keep its depot and platforms safe for those persons who have occasion to use the same, and, failing so to do, it is liable to persons who may be injured because of its negligence, but such a rule does not extend to such portions of the premises as are obviously not adapted to, or used for,

or necessary for, the transaction of the business for which such person is on the premises; and if he goes to such place, he puts himself outside the protection of his invitation, and the company is not responsible for injuries he may receive, unless it inflicts them wantonly and purposely. *Price v. Pecos Valley, etc., R. Co.* (1910), 15 N. M. 348, 110 Pac. 565, L. R. A. 1915B 827; *Masteller v. Chicago, etc., R. Co.* (1921), 192 Iowa 465, 185 N. W. 107; *Burbank v. Illinois Central R. Co.* (1890), 42 La. Ann. 1156, 8 So. 580, 11 L. R. A. 720; *Louthian v. Ft. Worth, etc., R. Co.* (1908), 50 Tex. Civ. App. 613, 111 S. W. 665.

In the Burbank case, *supra*, there were platforms on all sides of the building, the one on the south side being used exclusively for freight. The floor of this platform had been taken up. There was a lamp on the north side which threw a light along the west platform intended for the use of passengers but this light did not reach the freight platform. The plaintiff, leaving the place intended for passengers, ascended an inclined plane of the south platform and fell through the opening therein. She had no business that required her to go to the south or freight platform, and the court says: "Being a freight platform, it was not to be expected that it would be used as a promenade. In repairing this part of the platform around the depot on the south side, and leaving it unprotected, we are of the opinion that the opening was not in the nature of a trap, and the defendant company was not guilty of that degree of gross negligence that was equivalent to intentional mischief." It was there held that plaintiff could not recover.

In the Louthian case, the plaintiff went to the freight depot to procure a car for shipping purposes and finding the freight clerk busily engaged in a car on the sidetrack, endeavored to transact business with him there;

while standing on a gang plank affording entrance to the car, an engine, in making a coupling, suddenly moved the car, throwing the plaintiff to the ground. A recovery was denied, the court holding, in effect, that an office was provided for the transaction of business pertaining to freight; and no invitation was extended to the plaintiff to follow the agent into a place of danger.

In this case, appellee unquestionably went to appellant's station on invitation, and clearly had a right to protection there in such place as he needed to be for the transaction of the business for which he was invited. This business was to purchase a ticket and to check his baggage when the same arrived. When he presented himself at the ticket office, the agent was not present, being absent on business in the basement for about five minutes. Appellee's baggage had not yet arrived. The place for appellee to purchase his ticket and to transact his business was at the office of the ticket agent, and if he needed to identify his baggage when it thereafter arrived, the place for him to do so was upon the concrete platform where it was to be received. The uncontradicted evidence shows that the platform from which appellant fell when he received his injury was used exclusively for freight, and there was no necessity for appellee being thereon in search of a ticket agent. We must hold that the verdict of the jury is not sustained by sufficient evidence.

Instructions Nos. 1 and 3, given by the court at the request of appellee, and instructions Nos. 9 and 10 given by the court, of its own motion, were correct statements of the law, had appellee been injured at a place where, at the time of such injury, he had a right to be. But, in the absence of instructions as to the duty of the jury in the event that it should find that appellee, at the time of his injury, was at a place where passengers

would not, by an ordinarily prudent person, be expected to be, or should it find that appellee was upon a platform which was used exclusively by appellant for loading and unloading freight in connection with its business and was not a platform to be used by passengers, the instructions so given were misleading. Instructions Nos. 12, 14, 15 and 16, requested by appellant and refused would have instructed the jury as to its duty in this regard and they should have been given.

Appellant complains that the court refused to give its instructions Nos. 9, 10 and 11. These instructions pertained to the question of contributory negligence 4. on the part of appellee and they were covered by other instructions given by the court.

The judgment is reversed, with instructions to grant a new trial.

Dausman, P. J., dissents.